

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

February 7, 2020

**BY ECF AND BY FAX**

The Honorable Laura Taylor Swain
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Constantinescu et al.*, 19 Cr. 651 (LTS)

Dear Judge Swain:

      The Government respectfully submits this letter concerning a potential conflict of interest raised by the continued representation of defendant Mircea Constantinescu ("Constantinescu") by Tejinder Bains, Esq.  The potential conflict is generated by Mr. Bains's prior representation of another defendant in the case, Florian Claudiu Martin ("Martin").  As set forth below, the Government submits that the potential conflict thereby raised is waivable, but requests that the Court conduct a hearing pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982), with respect to both Constantinescu and Martin.

### I.     Background

      This case arises out of an investigation into a transnational ATM skimming and money laundering organization (the "Skimming Organization").  The Skimming Organization unlawfully obtained victim accountholders' debit card account information by using advanced technological devices to surreptitiously record the debit card numbers and personal identification numbers at ATMs, and then manufacturing counterfeit and fraudulent debit cards that bore the victim accountholders' account information.  The Skimming Organization's members then used those cards to fraudulently withdraw cash from victims' bank accounts.

      Certain members of the Skimming Organization directed or worked in teams that the Skimming Organization deployed across the United States in order to carry out ATM skimming attacks, casing ideal locations for the attacks, installing skimming devices on ATMs, removing those devices, and cashing out large numbers of fraudulent debit cards manufactured as a result of the skimming operations.  Other members of the Skimming Organization assisted in shipping and receiving packages containing skimming devices or component parts from other parts of the

Honorable Laura Taylor Swain
February 7, 2020
Page 2 of 11

United States and from abroad.  Other members of the Skimming Organization assisted in engineering the skimming devices that the Skimming Organization used.  Still other members of the Skimming Organization laundered the proceeds of the skimming attacks through bank accounts, properties, businesses, and the transportation of bulk cash.

The members of the Skimming Organization carried out hundreds of ATM skimming operations across the United States, including in New York and at least 17 other states.  The scheme defrauded financial institutions and individual victims of more than $20 million.

Both Martin and Constantinescu played critical roles in the Skimming Organization.  As the Organization's leader, Martin directed skimming and money laundering activity throughout the United States and elsewhere, for much of the time from Mexico, and also shipped packages containing skimming devices and skimming-related equipment to members of the Skimming Organization.  Constantinescu, for his part, was also a key participant in the Skimming Organization – in particular, in shipping and receiving those packages containing skimming devices and in laundering money for the Skimming Organization.

Based on this conduct, Indictment 19 Cr. 651 (LTS) charges Constantinescu with: (i) conspiracy to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2) (Count One); (ii) conspiracy to commit wire and bank fraud, in violation of 18 U.S.C. § 1349; (iii) aggravated identity theft, in violation of 18 U.S.C. §§ 1028A and 2 (Count Three); and (iv) conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Four).  Superseding Indictment S1 19 Cr. 651 (LTS) charges Martin with those same four offenses (Counts One through Four), as well as two substantive counts of bank fraud, in violation of 18 U.S.C. §§ 1344 and 2 (Counts Five and Six).

At a conference in this case on January 9, 2020, Tejinder Bains, Esq., who has been retained by Constantinescu in this case, informed Government counsel that he had realized upon seeing Martin that he had previously represented him in a different case.  Government counsel responded that the Government was likely to seek a *Curcio* hearing, and suggested that Mr. Bains: (i) consult with his client to explain the potential conflict; (ii) determine his client's position on the issue; and (iii) subsequently write to the Court to inform the Court of the situation.

On or about January 20, 2020, Mr. Bains wrote a letter to the Court (the "January 20 Letter"), stating that: (i) he had previously represented Martin in 2012; (ii) he did not recall "the specifics of the matter . . . , except that it involved a charge of possession of a forged instrument and did not result in any criminal conviction"; (iii) he did "not believe that this contact leads to any conflict of interest in this matter"; and (iv) he had notified both the Government and counsel for Martin of the issue.

## II. Applicable Law

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel, which includes "the right to representation by conflict-free counsel." *United States v. Schwarz*, 283 F.3d 76, 90 (2d Cir. 2002) (internal quotation marks omitted).

District courts have two separate obligations where there is a possible conflict of interest. First, the district court has an "inquiry obligation" when it is apprised of the possibility of a conflict of interest, under which it must "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *United States v. Levy*, 25 F.3d 146, 153 (2d Cir. 1994).

An actual conflict is one that is so severe that "no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation." *Levy*, 25 F.3d at 146; *see also United States v. Lech*, 895 F. Supp. 586, 589-90 (S.D.N.Y. 1995). As the Second Circuit has described it, an actual conflict exists when, "during the course of representation, the attorney's and defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action,' or 'when the attorney's representation to the defendant is impaired by loyalty owed a former client.'" *United States v. Blau*, 159 F.3d 68, 75 (2d Cir. 1998) (quoting *Winkler* v. *Keane*, 7 F.3d 304, 307 (2d Cir. 1993)). To show divergent interests, "[s]peculation is not enough." *Triana v. United States*, 205 F.3d 36, 42 (2d Cir. 2000). Nor is a "mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). Where an actual conflict is found to exist, the Court must disqualify the attorney, *Levy*, 25 F.3d at 153, even if the defendant expresses a desire to waive his right to conflict-free counsel. As the Supreme Court has stated:

> [W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.

*Wheat v. United States*, 486 U.S. 153, 159 (1988) (holding that there was no error in declining petitioner's waiver of his right to conflict-free counsel and refusing to permit his proposed substitution of attorneys); *see also United States ex rel. Stewart v. Kelly*, 870 F.2d 854, 858 (2d Cir. 1989) (consent would not be dispositive given trial court's independent obligation to ensure a fair trial).

Conflicts that do not fall into the categories of *per se* conflicts or actual conflicts are described as potential conflicts. *See, e.g.*, *Armienti v. United States*, 234 F.3d 820, 824 (2d Cir. 2000). "An attorney has a potential conflict of interest if 'the interests of the defendant may place the attorney under inconsistent duties at some time in the future.'" *Perez*, 325 F.3d at 125 (quoting *United States v. Kliti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998)). Conflicts "such as an attorney's representation of two or more defendants or his prior representation of a trial witness, are generally waivable." *Id.* at 127. However, since "such a conflict might require a defendant to abandon a particular defense or line of questioning," he should "seek the legal advice of

independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel." *Id.* (quoting *United States v. Fulton*, 5 F.3d 605, 613 (2d Cir. 1993)). If the defendant "can rationally opt to retain counsel of his choice despite a conflict, the court conducts a *Curcio* hearing to determine whether the defendant knowingly and intelligently waives his right to conflict-free representation." *Id.*

Second, if the district court finds after some inquiry that the defendant's attorney suffers from an actual or potential conflict, the district court then has a "disqualification/waiver" obligation, under which it is required either to disqualify the attorney if the conflict is sufficiently severe, or, if the conflict may be waived, to conduct a *Curcio* hearing to advise the defendant of the ramifications of the conflict and obtain a waiver of any conflict from the defendant.

The Second Circuit has set forth the requirements for a *Curcio* procedure in great detail:

> At such a hearing, the trial court (1) advises the defendant of his right to representation by an attorney who has no conflict of interest, (2) instructs the defendant as to the dangers arising from particular conflicts, (3) permits the defendant to confer with his chosen counsel, (4) encourages the defendant to seek advice from independent counsel, (5) allows a reasonable time for the defendant to make a decision, and (6) determines, preferably by means of questions that are likely to be answered in the narrative form, whether the defendant understands the risk of representation by his present counsel and freely chooses to run them.

*Perez*, 325 F.3d at 119.

### III. Discussion

The Government currently has no reason to believe that Mr. Bains's prior representation of Martin along with his present representation of Constantinescu creates a *per se* or actual conflict at this time. *Cf. Armienti*, 313 F.3d at 810 (describing types of conflicts). At issue here is at most a potential conflict.

New York Rule of Professional Conduct Rule 1.9(a) provides that "a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." New York Rules of Professional Conduct 1.9(a). In addition, Rule 1.9(c) states that the lawyer may not use confidential information of the former client to the disadvantage of the former client. *Id.* at 1.9(c).

Although Mr. Bains represented Martin in a separate case, the charge in that case (which Mr. Bains has described as involving "a charge of possession of a forged instrument," *see* January 20 Letter) appears to have involved similar conduct to the conduct charged here. It presumably involves conduct occurring in or about 2012, not long before the charged conduct in

this Indictment began (in or about 2014). At this stage and without further information about that representation, it is possible that some of evidence in this case may be overlapping to the evidence from the prior case. In any attorney-client relationship, moreover, courts should presume that "confidences were disclosed to the attorney bearing on the subject matter of the representation" and should not "inquire into their nature and extent." *T.C. Theatre Corp. v. Warner Bros. Pictures*, 113 F. Supp. 265, 268 (S.D.N.Y. 1953) (Weinfeld, J.). The Government therefore assumes for purposes of the conflict analysis that Mr. Bains is in possession of confidences and secrets of Martin by virtue of his prior representation of Martin, and that he likewise owes both Martin and Constantinescu a continuing duty of loyalty.

In this case, the interests of Martin and Constantinescu could diverge or come into conflict in a number of ways. Those interests may diverge both pre- and post-trial, creating a potential conflict which may implicate the duties of confidentiality and loyalty owed by Mr. Bains to both Martin and Constantinescu. That potential conflict could ripen into an actual conflict if, for example, Martin were to testify on his own behalf or as a Government witness at trial against Mr. Bains's current client, Constantinescu. An attorney's prior representation of a witness in a case against a current client presents an inherent conflict of interest. *See United States v. Locascio*, 6 F.3d 924, 931-32 (1993); *United States v. Iorizzo*, 786 F.2d 52, 57 (2d Cir. 1986); Restatement (Third) of the Law Governing Lawyers § 121 (2000) (recognizing that a serious problem arises when "there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by … the lawyer's duties to … a former client …."). That is because a lawyer owes an absolute duty of loyalty and confidentiality to his former client. *United States v. Yannotti*, 358 F. Supp. 2d 289, 295 (S.D.N.Y. 2004); *United States v. Rahman*, 861 F. Supp. 266, 274 (S.D.N.Y. 1994). That duty, which remains in force even after representation ends, precludes the lawyer from disclosing matters revealed to him by reason of the confidential relationship, absent release from that duty under the law. *See Rahman*, 861 F. Supp. at 274.

Furthermore, the duty of continuing loyalty requires that, in representing his current client, a lawyer cannot attack his former client through cross-examination or argument to the jury. *See United States v. Pizzonia*, 415 F. Supp. 2d 168, 177-78 (E.D.N.Y. 2006); *Rahman*, 861 F. Supp. at 277; *United States v. Massino*, 303 F. Supp. 2d 258, 262 (E.D.N.Y. 2003) ("[b]ecause of [the attorney's] prior representation of [the witness], [the attorney] cannot ethically cross-examine [the witness] without his consent."). Analogously, the duty of confidentiality requires that a lawyer not use privileged information obtained from his former client during a prior representation. *See United States v. James*, 708 F.2d 40, 45-46 (2d Cir. 1983); *United States v. Cunningham*, 672 F.2d 1064, 1072-73 (2d Cir. 1982). In short, both the duty of loyalty and the duty of confidentiality would effectively preclude Mr. Bains from vigorously cross-examining his former client, Martin, or commenting on his credibility, should Martin become a witness at trial, which would no doubt be essential to the effective representation of his current client, Constantinescu. *See United States v. Malpiedi*, 62 F.3d 465, 469 (2d Cir. 1995) (finding that the lawyer was prohibited from advancing his client's interest through "conduct[ing] a thorough, no-holds-barred cross-examination … because of [the lawyer's] obligations as [the witness's] prior attorney").

At present, however, because these circumstances have not yet arisen, Mr. Bains's prior representation of Martin creates, at most, a potential conflict that is waivable by Constantinescu after a *Curcio* hearing and a hearing confirming Martin's consent. *See Perez*, 325 F.3d at 127 (finding that prior representation of a trial witness is generally waivable). In light of the potential conflicts caused by Mr. Bains's prior representation, the Government respectfully requests that the Court conduct a *Curcio* hearing to advise Constantinescu of his individual right to conflict-free representation and to inquire as to whether he understands and waives the potential conflict here. Similarly, the Government requests that the Court conduct a hearing to advise Martin of the potential issues and to inquire of Martin whether he consents to Mr. Bains's representation of Constantinsecu, despite Bains's prior representation of Martin. After advising Martin and Constantinescu of the risks inherent in Mr. Bains's representation of Constantinescu, the Government requests that the Court afford Martin and Constantinescu reasonable time to digest and contemplate those risks. *United States v. Curcio*, 680 F.2d 881, 890 (2d Cir. 1982). Martin and Constantinescu should each be encouraged to take the opportunity to consult with another, independent defense counsel (in Constantinescu's case) or Martin's own conflict-free counsel (in Martin's case), and be informed that such counsel will be provided by the Court for this purpose if necessary. *Id.*; *see also Iorizzo*, 786 F.2d at 59 (2d Cir. 1986). If Martin and Constantinescu both subsequently inform the Court that they each wish to proceed with Mr. Bains as Constantinescu's counsel, the Government requests that the Court elicit narrative responses from Martin and Constantinescu designed to ascertain whether they are fully aware of the risks involved in the representation provided by Mr. Bains and determine whether Martin and Constantinescu are making a knowing and intelligent waiver of their rights.

If, after a full inquiry, the Court determines that Martin or Constantinescu have not knowingly waived this conflict; that the conflict is so egregious that no rational defendant could waive such a conflict; or that allowing Mr. Bains to represent Constantinescu would not ensure that this case would be conducted "within the ethical standards of the profession" such that the case appears "fair to all who observe [it]," then Mr. Bains should be disqualified from representing Constantinescu. *Wheat*, 486 U.S. at 160. Such disqualification would be well within the Court's broad discretion. *See United States v. Zichettello*, 208 F.3d 72, 104 (2d Cir. 2000) (noting a district court's "substantial latitude" to require disqualification even where defendants have attempted to waive any potential conflict as long as it determines that the conflict is "severe"); *Kelly*, 870 F.2d at 857 (upholding discretion of trial judge to disqualify defense counsel who had previously represented government witness even when offer was made to limit any cross-examination to only non-privileged materials); *United States v. DiTomasso*, 817 F.2d 201 (2d Cir. 1987) (noting that "[i]n this circuit, an attorney may be disqualified from representing a client in a particular case if . . . the attorney whose disqualification is sought had access to, or was likely to have access to, relevant privileged information in the course of his prior representation of the client."); *United States v. Kaufman*, 429 F.2d 240, 247 (2d Cir. 1970) (upholding district court's disqualification of lawyer from representing defendant when the lawyer previously represented a codefendant); *see generally Wheat*, 486 U.S. 153.

Honorable Laura Taylor Swain
February 7, 2020
Page 7 of 11

      For the convenience of the Court, the Government has attached a set of proposed questions to be put to the defendants as part of the *Curcio* inquiry.

                                              Respectfully submitted,

                                              GEOFFREY S. BERMAN
                                              United States Attorney for the
                                              Southern District of New York

                                  By:     /s/
                                              Elizabeth Hanft/Daniel Loss/
                                              Samuel Rothschild/Robert Sobelman
                                              Assistant United States Attorneys
                                              (212) 637-2334/6527/2504/2616

cc:     All counsel of record (by ECF)

**Proposed *Curcio* Examination of Constantinescu**

The Government respectfully requests that the Court conduct a *Curcio* inquiry of Constantinescu. The Government respectfully submits that a *Curcio* hearing should address the following issues:

Introductory Matters

1. How old are you?
2. How far did you go in school?
3. Do you presently consult a doctor, psychiatrist, or medical professional for any condition?
4. Within the last 24 hours, have you taken any alcohol, drugs or pills of any kind?
5. Are you currently represented by Mr. Bains?
6. Have you been satisfied with Mr. Bains's representation so far in this case?
7. Has Mr. Bains represented you in matters which occurred before this one? If so, how many?
8. When was it that Mr. Bains first represented you?
9. Were you satisfied with Mr. Bain's representation of you in each of the prior matters?

Considerations Regarding Mr. Bains's Prior Representation of Florian Claudiu Martin

10. Do you understand that Mr. Bains previously represented Florian Claudiu Martin in a criminal matter?
11. Do you understand that Mr. Bains has a duty of loyalty to his former client and cannot use any information he obtained from his former client while representing you in this matter?
12. Do you understand that Mr. Bains is required by his duty of loyalty to serve the best interests of Mr. Martin as well as your best interests?
13. Do you understand if you continue to be represented by Mr. Bains, he cannot advise or help you in doing anything that would hurt Mr. Martin, even if it is in your best interest to do so?
14. Do you understand that Mr. Bains cannot help you in providing assistance to the Government that might hurt Mr. Martin, even if it turns out that doing so might be in your best interest?
15. Do you understand that Mr. Bains may have to refrain from making certain arguments at your trial, should you decide to go to trial, or at some other proceeding, regarding the evidence in this case, even though such arguments may be beneficial to you, because of his prior representation of Mr. Martin?

Honorable Laura Taylor Swain
February 7, 2020
Page 9 of 11

16. So that the Court may be sure that you fully understand these issues, please describe in your own words your understanding of the potential problems created by Mr. Bains roles as your attorney in this case and his prior representation of Mr. Martin.
17. Do you understand, that in every criminal case, including this one, a defendant is entitled to the assistance of counsel whose loyalty to him is undivided, and who is not subject to any force or consideration that might in any way intrude upon the attorney's loyalty to his client's interests?
18. Have you had the opportunity to speak with Mr. Bains about the conflict-of-interests issues that arise because of Mr. Bains's prior representation of Mr. Martin?

General Considerations

19. With respect to all of the issues I've just discussed, do you understand that you have a right to consult with a lawyer other than Mr. Bains to help you determine whether you wish Mr. Bains to continue to represent you in this case?  Do you understand that the Court will give you an opportunity to do so, and that the Court encourages you to do so?  Do you understand that, if you cannot afford other counsel, the Court will appoint counsel to consult with you about these issues and/or to represent you?
20. It is important that you understand that no one can predict with any certainty the course that this case will take or how the restrictions on Mr. Bains's ability to represent you may adversely affect Mr. Bain's ability to represent you will affect you. Do you understand that?
21. Do you understand that the restrictions on Mr. Bain's ability to represent you may adversely affect Mr. Bains's representation of you in this case in ways that we have not yet discussed?  Let me give you some examples.  Do you understand that the restrictions on Mr. Bains may affect the way that Mr. Bains considers:
    A. Whether, and when, you should plead guilty
    B. What defenses you should raise
    C. What motions to file on your behalf
    D. Whether you should testify at trial; if there is a trial
    E. Which witnesses should be cross-examined at trial, and what questions they should be asked
    F. Which witnesses to call, and what other evidence to offer, on your behalf
    G. Which arguments to make on your behalf to the jury, including the decision of whether to make any arguments to the jury that are antagonistic to Mr. Martin
    H. Which arguments to make to me, and what facts to bring to my attention, at your sentencing, if you are convicted
22. Do you understand these examples I have given?  Do any of the examples concern you?  Why not?

Honorable Laura Taylor Swain
February 7, 2020
Page 10 of 11

23. Are you aware that, if convicted, you will not be able to appeal on any of the issues that I've discussed with you if you elect to waive the potential problems associated with Mr. Bains's restrictions on his representation of you and elect to continue to retain Mr. Bains as your attorney in this case? Do you understand that an appellate court would take into account your consent to his continued representation of you and hold that you have given up your right to complain of any problems associated with Mr. Bains's restrictions on his representation of you?
24. Having considered the ways in which Mr. Bains's restrictions on his representation of you may affect his representation of you, do you still wish to proceed in this case with Mr. Bains as your attorney?
25. Do you understand that if you proceed with Mr. Bains as your attorney, you will not be able to claim later on that you were prejudiced in any way because of Mr. Bains's restrictions on his representation of you?
26. Have you received any inducement or promise that may have influenced your decision on this issue?
27. Have you received any inducement, promises, or threats that may have influenced your choice of counsel in this case?
28. Have you been threatened in any way concerning your decision on this issue?
29. Is there anything that the Court has said that you wish to have explained further?

## Proposed Examination of Martin

The Government respectfully requests that the Court conduct an inquiry of Martin. The Government respectfully submits that the hearing should address the following issues:

Introductory Matters

1. How old are you?
2. How far did you go in school?
3. Do you presently consult a doctor, psychiatrist, or medical professional for any condition?
4. Within the last 24 hours, have you taken any alcohol, drugs or pills of any kind?
5. Are you currently represented by Mr. Sapone?
6. Have you been satisfied with Mr. Sapone's representation so far in this case?
7. Has Mr. Bains represented you in matters that occurred before this one? If so, how many?
8. When was it that Mr. Bains first represented you?
9. Were you satisfied with Mr. Bain's representation of you in each of the prior matters?

Considerations Regarding Mr. Bains's Representation of Mircea Constantinescu

10. Do you understand that Mr. Bains represents Mircea Constantinescu in this case?
11. Do you understand that Mr. Bains has a duty of loyalty and a duty of confidentiality to you and cannot use any information he obtained from you while representing Constantinescu in this matter?

Honorable Laura Taylor Swain
February 7, 2020
Page 11 of 11

12. Do you understand that Mr. Bains is required by his duty of loyalty to serve your best interests as well as his client, Mr. Constantinescu's, best interests?
13. Do you understand that, at some point in this case, your interests may become adverse to Mr. Constantinescu's, in light of information or confidences you may have shared with Mr. Bains in his prior representation of you?
14. Have you provided your written consent, in writing, to Mr. Bains, allowing him permission to represent Mr. Constantinescu in this case?
15. Have you discussed that consent and any potential issues that may arise with your counsel, Mr. Sapone?
16. Do you consent here today to Mr. Bains's representation of Mr. Constantinescu in this case?
17. Are you aware that, if you are convicted in this case, you will not be able to appeal on any of the issues that I've discussed with you if you elect to waive the potential problems associated with Mr. Bains's representation of Mr. Constantinescu in this case?  Do you understand that an appellate court would take into account your consent to his continued representation of Mr. Constantinescu and hold that you have given up your right to complain of any problems associated with Mr. Bains's representation of Mr. Constantinescu?
18. Having considered the ways in which Mr. Bains's continued representation of Mr. Constantinescu may affect your case, do you still wish to provide your consent for him to represent Mr. Constantinescu?
19. Do you understand that, if you proceed with that consent, you will not be able to claim later on that you were prejudiced in any way because of Mr. Bains's representation of Constantinescu?
20. Have you received any inducement or promise that may have influenced your decision on this issue?
21. Have you received any inducement, promises, or threats that may have influenced your choice of your own counsel in this case?
22. Have you been threatened in any way concerning your decision on this issue?
23. Is there anything that the Court has said that you wish to have explained further?